IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
CREEKSTONE FARMS PREMIUM BEEF, LLC,         )
                                            )
            Plaintiff,                      )
                                            )
      vs.                                   )   Civil Action No. 06-544 (JR)
                                            )
UNITED STATES DEPARTMENT OF AGRICULTURE,    )
and MIKE JOHANNS, IN HIS CAPACITY AS THE    )
SECRETARY OF AGRICULTURE,                   )
                                            )
            Defendants.                     )
_____)

# **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56.1, plaintiff Creekstone offers the following responses to the defendants' statement of material facts as to which there is no genuine issue. For the most part, Creekstone agrees that the statements presented by defendants are undisputed, but disagrees that they are material to the resolution of Creekstone's claims, as discussed in Creekstone's Reply Memorandum. To the extent that Creekstone disagrees with the substance of defendants' statement of facts below, Creekstone suggests that there is no genuine issue to be litigated, as Creekstone's objections are based on defendants' own references or on uncontroverted information presented in Creekstone's Memorandum in Support of its Motion for Summary Judgment or its Reply Memorandum[1]:

---

[1] USDA objects to Creekstone's Statement of Material Facts in support of Creekstone's motion for summary judgment because that statement did not include "citations to the record or any other evidence supporting such statements as required under LCvR 56.1." But USDA has not yet prepared the administrative record and certified it to the Court (by agreement, pending a decision

1. The incubation period for BSE ranges from two to eight years with an average of five years, meaning that on average it takes five years from the date a cow is infected with BSE for the cow to show any outward clinical signs of the disease, such as abnormal posture, inability to walk, and other impaired coordination. Declaration of Lisa A. Ferguson ("Ferguson Decl.") (Exhibit 1 to Consolidated Memorandum in Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defs.' Mem.")) ¶ 5. As a result, BSE generally affects older cattle, typically more than 30 months of age. Id. Only a few cases of BSE have been found in animals less than 30 months of age, and these have occurred primarily in countries with significant levels of circulating infectivity. Id.

Response: Undisputed, except for the last sentence. BSE has been found in cattle under 30 months of age in the United Kingdom, Germany, Japan, Poland, and Portugal. Plaintiff's Reply Memo Exh. 10 ¶ 22; Plaintiff's Memo in Support Exhibit 5 p. 2. Poland and Japan, at least, do not appear to have "significant levels of circulating infectivity." *Cf*. Plaintiff's Reply Memo Exh. 9 p. 15.

2. In the United States, the majority of cattle going to slaughter are less than 24 months old. Ferguson Decl. ¶ 5; Stanley B. Prusiner, "Detecting Mad Cow Disease," Scientific American (July 2004) ("Prusiner Article") at 91 (attached as Exhibit 3 to Pl.'s Mem.).

Response: Undisputed. But the determination of age is often by an inherently inaccurate method. Plaintiff's Reply Memo Exh. 8 ¶ 11.

3. The earliest point at which current testing methods can detect a positive case of BSE is two to three months before a cow would demonstrate clinical signs of the disease. Ferguson

---

by the Court on whether USDA's actions were outside of its statutory authorization), and LCvR 56.1 does not require citations to "any other evidence supporting such statements."

Decl. ¶ 6; Declaration of Byron Rippke ("Rippke Decl.") (Exhibit 2 to Defs.' Mem.) ¶ 9.

Response:  Disputed.  BSE was recently detected in a 50-month old cow in Canada an estimated four to eight months before the cow would have displayed symptoms that might have caused it to be tested because of suspicion of BSE.  Plaintiff's Reply Memo Exh. 8 ¶ 5; Exh. 10 Attachment B.  Also disputed to the extent the statement implies that all cattle with BSE will demonstrate clinical signs of the disease, which would not take into account "atypical BSE," which usually does not present any clinical symptoms, and so can be identified only through testing.  Plaintiff's Reply Memo Exh. 8 ¶¶ 8-9 and Attachment C.

4.  Given that the average incubation period of the disease is five years, a negative test on a cow under 24 months old cannot be interpreted to mean that the cow is necessarily "BSE-free."  Ferguson Decl. ¶ 6; Prusiner Article at 91.

Response:  Undisputed, except to the extent it implies that a negative test on a cow over 24 months of age, or over 30 months of age, can be interpreted to mean that the cow is necessarily "BSE-free," which is refuted by USDA's own reference:  Ferguson Decl. ¶ 6 (there is a long period in the life on an infected animal when current BSE tests will not detect the disease; BSE test will be positive only a few months before cattle show outward signs of disease (regardless of age)); *id*. ¶ 5 (cattle likely become infected at an early age but typically have not developed sufficient infection to develop clinical signs of BSE for five years or more).

5.  Since 1990, the USDA's Animal and Plant Health Inspection Service ("APHIS") has conducted surveillance testing of cattle in the United States in order to estimate the prevalence of BSE in the nation's herd. Ferguson Decl. ¶ 9. In June 2004, APHIS implemented an enhanced BSE surveillance testing program under which the agency, in a one-time effort, set out to test as

many cattle as possible in the high-risk population for a 12 to 18 month period in order to obtain a snapshot of the U.S. cattle population and to provide a more accurate estimate of the prevalence, if any, of BSE in that population. Id.  The BSE testing is performed exclusively by a number of government-affiliated labs; private testing is not permitted.  Id. To date, APHIS has tested over 750,000 cattle for BSE with only two positive results. Id. Analysis of the test results indicates that the prevalence of BSE in the United States is less than one case per million adult cattle and estimates that out of the 42 million adult cattle population in the United States between four and seven cattle are expected to be infected with the disease.  Id. ¶ 10.

    Response:  Undisputed that USDA has conducted the testing that it describes and that it estimates the incidence of BSE in U.S. cattle to be less than one case per million adult cattle in the U.S.  Disputed to the extent that this statement implies that there will never be more than four to seven cattle with BSE in the adult U.S. cattle population, since the statement does not address, e.g., significant imports of cattle from Canada where the BSE incidence is higher.  Plaintiff's Reply Memo Exh. 10 ¶¶ 5-7 and Attachment B p. 3 (seven BSE cases out of 117,000 cattle tested).

    6. The high-risk cattle that the APHIS surveillance testing targets include cattle older than 30 months of age, cattle exhibiting signs of central nervous system disorders, and non-ambulatory cattle.  Ferguson Decl. ¶ 10.

    Response:  Disputed, as it is inconsistent with USDA's own reference:  Ferguson Decl. ¶ 10 refers to targeted testing of cattle "exhibiting clinical signs of abnormalities, including signs of central nervous system disorders, and non-ambulatory cattle," and not cattle that are merely over 30 months of age.

    7. Because USDA's surveillance testing targets high risk and older cattle, in which the

disease, if present, has had a sufficient amount of time to mature to become detectable, the BSE tests are more effective at correctly determining whether a cow has BSE when used on those cattle than when used on cattle younger than 24 months old exhibiting no signs of the disease. Ferguson Decl. ¶ 6; Prusiner Article at 91; 70 Fed. Reg. 460, 475 (Jan. 4, 2005).

    Response:  Undisputed, except to the extent that the statement is intended to imply that USDA's targeted surveillance testing would be more likely to identify cattle where BSE has progressed to the point where the animal has begun or will soon begin to display clinical signs of the disease than would using the same tests on cattle younger than 24 months of age exhibiting no signs of the disease.  Regardless of the age of the cattle, the Bio-Rad test kits used by USDA are effective at detecting the abnormal prion proteins believed to cause BSE if they have reached a sufficient concentration in the animal's brain stem.  See Rippke Decl. ¶ 9 (test depends on accumulation of a sufficient concentration of prions in the brain); Plaintiff's Memo in Support Exh. 6 pp. 3 and 11 (Bio-Rad test is "very effective" and "robust" test method).

    8.  The World Organization for Animal Health (Office International des Epizooties ("OIE")) has stated that "[t]esting of routine slaughter cattle 36 months of age or less is of relatively very little value." OIE, Terrestrial Animal Health Code – 2005, Appendix 3.8.4 Surveillance for Bovine Spongiform Encephalopathy, Article 3.8.4.2. (Exhibit 26 to Defs.' Mem.).

    Response:  Undisputed.

    9.  There have been only three confirmed cases of cattle infected with BSE in the United States. Ferguson Decl. ¶ 12.

    Response:  Undisputed.

    10.  Japan has lifted its ban against U.S. beef and has resumed importing U.S. beef.

Ferguson Decl. ¶ 13; Carl Freire, Japan's Health Minister Announces Lifting of Ban on US Beef Imports, Associated Press, July 27, 2006 (Exhibit 18 to Defs.' Mem.).

<u>Response</u>:  Undisputed, except to the extent that the statement implies that Japan has resumed importing beef as before the BSE-related ban, since Japan now only allows boneless cuts of beef from cattle under 20 months of age.  *See* Exhibit 18 to Defs.' Mem. at 2.

11.  Plaintiff has resumed its shipments of beef to Japan.  <u>See</u> Kansas Meatpackers Say South Korea Move Will Boost Sales, Associated Press, September 12, 2006 (Exhibit 19 to Defs.' Mem.); Phyllis Jacobs Griekspoor, Creekstone Prepares to Resume Exports to Japan, Wichita Eagle, July 29, 2006 (Exhibit 20 to Defs.' Mem.)

<u>Response</u>:  Undisputed.

12.  A significant portion of plaintiff's products historically have been sold in Asia, especially Japan. Complaint ¶ 4.

<u>Response</u>:  Undisputed.

13.  In 2003, before it imposed its ban, Japan was the top importer of U.S. beef, purchasing approximately $1.4 billion worth of American beef.  <u>See</u> Aya Takada, Japan Says U.S. Suit Won't Change Beef Trade Rules, Reuters, March 24, 2006 (Exhibit 16 to Defs.' Mem.); Phyllis Jacobs Griekspoor, Creekstone Prepares to Resume Exports to Japan, Wichita Eagle, July 29, 2006 (Exhibit 20 to Defs.' Mem.).

<u>Response</u>:  Undisputed.

14.  The first shipment of U.S. beef to Japan since Japan lifted its ban, consisting of approximately five metric tons of beef, sold out the first day it was offered at Tokyo area stores. <u>See</u> Lester Aldrich, USMEF Says Japanese Consumers Snapping Up US Beef, Dow Jones Newswires, August 9, 2006 (Exhibit 21 to Defs.' Mem.).

Response:  Undisputed.

15.  South Korea recently lifted its ban against U.S. beef and is expected to resume its imports of U.S. beef in the next few weeks.  Ferguson Decl. ¶ 13.

Response:  Undisputed, except to the extent that the statement implies that Korea has resumed importing beef as before the BSE-related ban, since Korea now only allows beef with no bone fragments, cartilage, or "silver skin" included.  See Exh. 1 to Plaintiff's Reply Memorandum ¶ 5 and Attachment E.

16.  On March 17, 2004, USDA's Animal and Plant Health Inspection Service's ("APHIS") Center for Veterinary Biologics ("CVB") issued its Notice No. 04-08.  See March 17, 2004 Notice No. 04-08 (Exhibit 5 to Defs.' Mem.).  In this notice, the CVB indicated that Biological Product Licenses for BSE test kits will be issued subject to the restrictions that the sale of BSE test kits in the United States be restricted to laboratories approved by State and Federal (USDA) animal health officials for the purpose of participating in USDA's program of BSE surveillance testing, and that distribution and use of BSE test kits shall be under the supervision or control of USDA's APHIS Veterinary Services.  Id.

Response:  Undisputed.

17.  On April 8, 2004, at a meeting between representatives of plaintiff and USDA, USDA informed plaintiff that its request for a license to use BSE rapid test kits in a private marketing program could not be granted, because BSE test kits were designed for animal health surveillance purposes, the indiscriminate testing of all animals at slaughter regardless of age or outward signs of disease, as proposed by plaintiff, would serve no animal health purpose, and plaintiff's proposed use of the test kits would imply a food safety aspect that is not scientifically justified.  See Ferguson Decl. ¶ 11. USDA issued a press release the following day explaining its

decision and reiterating that USDA has taken a number of measures to protect consumer health and the animal herd from BSE and that an international panel of experts noted that "there is no scientific justification for 100 percent testing because the disease does not appear in younger animals." April 9, 2004 USDA Press Release No. 0141.04 (Exhibit 6 to Defs.' Mem.).

    Response: Undisputed.

    18. On May 9, 2006, the House Appropriations Committee voted against an amendment that would have required USDA to allow meatpackers, such as plaintiff, to conduct private BSE testing. See Libby George and Catharine Richert, Committee Approves $93.6 Billion Agriculture Spending Bill, Congressional Quarterly, May 9, 2006, at 2, 5 (Exhibit 14 to Defs.' Mem.).

    Response: Undisputed.

    19. Diagnostic tests commonly detect or measure antigens, antibodies, nucleic acids, or immunity. See Rippke Decl. ¶ 6.

    Response: Undisputed.

    20. Like viruses, serums, or toxins, diagnostic tests frequently interact with the immune system in order to identify the presence or absence of a disease or condition. See Rippke Decl. ¶ 6.

    Response: Disputed: Viruses, serums, and toxins, at least as those terms are used in the Virus-Serum-Toxin Act of 1913, 21 U.S.C. §§ 151 et seq., do not interact with the immune system to identify the presence or absence of a disease or condition. They stimulate the body of an animal to produce antibodies to protect it from a disease, or they provide those antibodies directly to the animal for the same purpose. Rippke Decl. ¶ 5.

    21. Diagnosis is an inherent and commonsense aspect of any treatment. Rippke Decl. ¶ 11.

Response: Disputed. Treatment follows diagnosis. *See Pegram v. Herdrich*, 530 U.S. 211, 228 (2000), cited by defendants, which refers to "diagnosing *and* treating" (emphasis added).

22. BSE test kits employ antibodies that interact and bind with the abnormal protein prions thought to cause BSE. See Rippke Decl. ¶ 7; Pl.'s Mem. at 8-9. Antibodies have a direct effect on the immune system like viruses, serums, and toxins do. See Rippke Decl. ¶¶ 5-7.

Response: The first sentence is undisputed. The second sentence is disputed. Antibodies are produced by, rather than having a direct effect on, the immune system. Rippke Decl. ¶ 5. Also disputed to the extent that it implies that the antibody used in BSE test kits is affecting the immune system of an animal, as viruses, serums, or toxins do. *See* Plaintiff's Reply Memo Exh. 8 ¶ 16.

23. Serums contain antibodies and are used to transfer immunity to another individual, and toxins are capable of inducing neutralizing antibodies or antitoxins. Pl.'s Mem. at 35 n.14.

Response: Undisputed.

24. BSE test kits are used to diagnose the presence of the BSE disease in cattle. See Rippke Decl. ¶ 7.

Response: Disputed. BSE test kits are used to determine whether the brain stems of dead cattle contain abnormal prion proteins. 70 Fed. Reg. 460, 461 (Jan. 5, 2005); Plaintiff's Memo in Support Exh. 3 pp. 86, 89.

25. Current BSE surveillance testing conducted under the auspices of USDA contributes to the knowledge of the disease and may increase the chances of developing therapies or cures for the disease in the future. See Rippke Decl. ¶ 10.

Response: Undisputed that USDA's surveillance testing contributes to the knowledge of

the disease. It is unclear how testing itself may increase the chances of developing therapies or cures, and the reference provides no explanation of that

26. Indiscriminate testing of all animals at slaughter, regardless of age or outward signs of disease, serves no human or animal health or food safety purpose. See Ferguson Decl. ¶¶ 5-6, 11.

Response: Disputed. Virtually every country with BSE tests all animals, or all animals above a certain age, presented for normal slaughter. See Plaintiff's Reply Memo Exh. 9 pp. 8 and 13. Such testing increases the number of BSE cases found over testing of only cattle with suspicious symptoms, as in USDA's surveillance testing. See id. Exh. 11; id. Exh. 8 ¶ 18. Testing of health-appearing cattle is an important means of reducing the chances of infected materials from healthy-appearing cattle entering the animal feed or human food supply. See Plaintiff's Memo in Support Exh. 3 pp. 89, 91-92; id. Exh. 5 p. 3 (Japanese government tests all cattle for purposes of "ensuring the safety of meat"); Plaintiff's Reply Memo Exh. 8 ¶¶ 8, 11, 14-15; id. Exh. 10 ¶¶ 18-21.

Dated: November 3, 2006               Respectfully submitted,

                                                   __/s/ Russell S. Frye_____
Russell S. Frye (D.C. Bar No. 331124)
FryeLaw PLLC
P.O. Box 33195
Washington, DC 20033-0195
(202) 572-8267
rfrye@fryelaw.com

                                                __/s/ William L. Miller_____
William L. Miller (D.C. Bar No. 443191)
The William Miller Group, PLLC
1666 Connecticut Avenue, N.W.
Washington, DC 20009

(202) 256-2306
wmiller@williammillergroup.com

__/s/ Peter C. Choharis_____
Peter C. Choharis (D.C. Bar No. 444787)
2771 Woodley Place, NW
(202) 422-8312
Washington, D.C. 20008
pchoharis@yahoo.com

Attorneys for Plaintiff
CREEKSTONE FARMS PREMIUM BEEF, LLC